# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,                                    Criminal No. 17-296(1) (DWF/LIB)

               Plaintiff,

                                    **MEMORANDUM**
v.                                                                  **OPINION AND ORDER**

Anthony Keith Meister,

               Defendant.

This matter is before the Court on Defendant's Motion pursuant to Fed.R.Crim.P. 36 (Doc. No. [106]) to Correct the Written Sentencing Judgment of the Court, asserting that the record establishes a concurrent sentence with all State sentences that had been imposed on September 28, 2017, namely 68 months on a Felony Second Degree Drug Possession charge in Stearns County,[1] 85 months on a Felony Second Degree Drug Possession charge in Stearns County,[2] 21 months on a Felony Check Forgery charge in Stearns County,[3] 21 months on a Second Felony Check Forgery charge in Stearns County,[4] all to run concurrent with one another.[5]  With respect to the two 21-

---

[1]     Doc. No. 73-CR-16-7168

[2]     Doc. No. 73-CR-16-7169

[3]     Doc. No. 73-CR-16-11744

[4]     Doc. No. 73-CR-16-10623

[5]     Defendant also filed a *self-styled Pro Se* Motion/Request to Modify Sentence. (Doc. No. 97.)

month sentences that were imposed by the State Court on September 20, 2017, the anticipated release date was August 21, 2018.[6]   The anticipated release date on the 68-month sentence is February 21, 2021.   The anticipated release date on the 85-month sentence is February 20, 2022.   The Government opposes Defendant's Motion.

The undersigned sentenced the Defendant to a period of 61 months on October 25, 2018.   The issue before the Court is whether the Court's sentence was concurrent to all four State sentences imposed on September 28, 2017 or just the 21-month sentences. One issue that is not in dispute is that irrespective of the Court's decision, the Defendant will be serving 3 years on supervised release on the federal offenses.

Based upon the presentations of the parties and the Court having reviewed the entire record in this matter, including not only its procedural history, but the sentencing transcript from October 25, 2018 and being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1.      Based upon the Court's oral statements at the sentencing hearing on October 25, 2018 at which time the Court stated:

> As the sentence of this Court and judgment of the law, I commit you to the Bureau of Prisons . . . . It's 37 months on the first count, the consecutive, 24 months that creates 61 months . . . and I direct that it run concurrent with the existing **State sentences** . . . beginning today.

(Doc. No. 109 at 36 (emphasis added).)

---

[6]      Consequently, at the time of the Federal sentence this Court imposed on October 25, 2018, the two 21-month sentences had already been served.

Defendant's Motion to Correct the Written Sentencing Judgment to what is consistent with the oral sentence imposed by the Court on October 25, 2018 pursuant to Rule 36 (Doc. No. [106]) is **GRANTED**.

2.      However, Defendant's *self-styled Pro Se* Motion/Request to Modify Sentence (Doc. No. [97]) is respectfully **DENIED**.

3.      The attached memorandum is made a part hereof.


Dated:   April 28, 2020                          s/Donovan W. Frank
                                                 DONOVAN W. FRANK
                                                 United States District Judge

## MEMORANDUM

The Court is obligated to state that both parties are correct in the positions they have taken in their submissions to the Court.   And, perhaps it is the Court's lack of specific and proper language describing the Court's intent as to what the sentence was to run concurrent to and what, if anything, was to be run consecutive that has created the issue that the parties have now addressed, and the Court has ruled upon.

Specifically, the Court finds that Government's counsel is correct when she states that the Court is without authority to vacate or otherwise modify a sentence on the facts of the case and the record before the Court.   As observed by the Government, after a court issues a Judgment and Conviction Order, a District Court has limited jurisdiction to modify or amend that order.   After a period of seven days, the Court may only modify or correct "clerical errors" pursuant to Fed.R.Crim.P. 36.   Obviously, that time has long since passed.

The Court finds that Defense counsel is also correct when he states that pursuant to Fed.R.Crim.P. 36, the Court at any time can correct the written sentencing judgment to conform to the oral sentence directed at the sentencing hearing.   Pursuant to Fed.R.Crim.P. 35(c) sentencing is defined as observed by defense counsel, ". . . means the oral announcement of that sentence."

Unfortunately, and that rests on the shoulders of the Court, the entire discussion during the sentencing hearing assumed that approximately 40 months would be left of the Federal sentence which would mean that it was going to be consecutive to the 85-month and 68-month sentences imposed by the State Court on September 28, 2017 along with

the other two 21-month sentences.   Moreover, confirmation of the assumption of a 61-month consecutive sentence is the fact that there was a meaningful discussion during the sentencing of the Defendant's eligibility for the Residential Drug Treatment Program ("RDAP") with the Bureau of Prisons.   Not unique to this Defendant's case, if there is not at least a 36-month or more sentence for a defendant, they are generally not eligible for the RDAP program pursuant to Bureau of Prisons policy.   However, that is not what the Court stated in the courtroom when it said, "I direct that it can run concurrent with the existing State sentences beginning today."

Admittedly, the Defendant himself raised at the time of the sentencing before this Court that he really wanted to go in to the Challenge Incarceration Program and treatment at what is commonly called the "boot camp" in Willow River and that it was a 6-month program.   However, and perhaps unfortunately, when there is any type of hold from another Court on a defendant, that renders a defendant ineligible for that program, even though the Court acknowledges if it would have been approached by the Minnesota State Department of Corrections' officials, it would have approved entry into that program without approving any work release or other conditions.   The Defendant addressed this in a *pro se* letter to the Court which the Court received on August 7, 2019. (Doc. No. 97.) While the Defendant did not so state at the time of his hearing before this Court, even with an 85-month sentence imposed on September 28, 2017 in State Court, the Defendant was hoping to be eligible almost immediately for the Challenge Release Program (CIP) known as the boot camp program with treatment of approximately 6 months.   (*Id.*)   He accurately stated that with only an additional 10 months of Federal time extending

beyond his State sentence time, he would not be eligible for that program and therefore he asked this Court to vacate the remainder of the Federal sentence which the Court has already acknowledged it does not have authority to do.

The Court, however, intends to end on what it views as a positive note.   The Defendant will be on supervised release with the Federal Court for a period of not less than 3 years, so we will be evaluating the Defendant once he is in the Federal Court's supervision consistent with other similar situated defendants for entry into a treatment program with or without a halfway house placement.   That will be, and currently is, a condition of his supervised release.   That will also include support group work, connections with a sponsor as he has said he is already doing, and any other conditions that serve his best interests in addressing any mental health issues and his chemical dependency issues, which all relate to successful rehabilitation and making a successful transition into the community.

Given the letters I have received on behalf of the Defendant and the family members and children who are here to support the Defendant, Mr. Meister has more reasons that most defendants who come before the Court to make a release plan work even though it is not the one he was hoping for.   And, as I suggested during the sentencing hearing, our Federal statistics are that two out of three defendants who participate in a treatment program, work a 12-step program and stay straight and sober, do not return on a new crime or new violation.   There is no reason why Mr. Meister should not be in that group of individuals and consequently can be the father that he wants to be, the son that he wants to be, and the friend that he wants to be.   All this

means that there is no reason why Mr. Meister cannot be a productive member of society and live the life that he wants to live despite what has happened in these cases in State and Federal Court.   In the words of your mother, Mr. Meister:   "I'm 77 years old and am praying that I get to see him clean and sober, happy and living a normal life."

D.W.F.